1

2

3

4

5

6

7

8                           UNITED STATES DISTRICT COURT

9                       FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    RICHARD LEWIS,                              Case No.  1:23-cv-00079-NODJ-BAM

12                    Plaintiff,                  FINDINGS AND RECOMMENDATIONS
                                                  REGARDING PLAINTIFF'S MOTION FOR
13          v.                                    DEFAULT JUDGMENT (Doc. 20)

14    HERBERT ZENO, *et al*.,                     **FOURTEEN (14) DAY DEADLINE**

15                    Defendants.

16

17

18          Currently pending before the Court is Plaintiff Richard Lewis's ("Plaintiff") motion for

19   default judgment against Defendant Herbert Zeno and Defendant Unknown Riders M.C.

20   (collectively, "Defendants").  (Doc. 20.)  The motion was referred to the undersigned pursuant to

21   28 U.S.C. § 636(b)(1)(B) and Local Rule 302.  Defendants did not file an opposition to the

22   motion, and the time in which to do so has passed.   L.R. 230(c) ("Opposition . . . to the granting

23   of the motion shall be in writing and shall be filed and served no later than fourteen (14) days

24   after the motion was filed".)

25          On February 15, 2024, the Court vacated the hearing on this matter and indicated that the

26   motion would be taken under submission.  (Doc. 25.)  Having considered the moving papers,

27   supplemental briefing, and the record in this action, and for the reasons that follow, the Court

28   RECOMMENDS that Plaintiff's motion for default judgment be granted.

1

1

## I.    FACTUAL AND PROCEDURAL BACKGROUND

2      On January 12, 2023, Plaintiff filed this action pursuant to federal copyright law, 17

3   U.S.C. §§ 106 *et seq.*, and California's Unfair Competition Law, California Business &

4   Professions Code § 17200, *et seq.*, alleging copyright infringement by Defendants of Plaintiff's

5   copyrighted visual artwork.  (Doc. 1.)

6      Plaintiff alleges that he designed and created the visual artwork at issue in 1972 when he

7   and four other individuals formed the motorcycle club Unknown Riders MC – Fresno.  (Doc. 1

8   ¶¶ 23, 25.)  Plaintiff alleges that the Unknown Riders MC – Fresno organization continues to use

9   and display the copyrighted visual artwork and Plaintiff authorizes the use of that artwork by the

10   Unknown Riders MC – Fresno organization.  (*Id.* ¶ 30.)  Plaintiff further alleges that Defendant

11   Zeno had been a member of the Unknown Riders MC – Fresno organization until a dispute, at

12   which point Defendant Zeno formed his new organization, Unknown Riders M.C., which is

13   distinct from Unknown Riders MC – Fresno.  (*Id.* ¶¶ 31-34.)  In approximately 2021, Plaintiff

14   alleges that he demanded Defendant Zeno and his organization, Defendant Unknown Riders

15   M.C., cease and desist from using his copyrighted visual artwork.  (*Id.* ¶ 36.)  Plaintiff further

16   alleges that in response to Plaintiff's actions, Defendant Zeno initiated a suit in Fresno County

17   Superior Court in which Defendant Zeno asserted that he and Defendant Unknown Riders M.C.

18   owned the rights to Plaintiff's copyrighted visual artwork.  (*Id.* ¶ 38.)  Plaintiff contends that in

19   Defendant Zeno's Fresno County Superior Court complaint, Defendant Zeno stated that he had

20   prominently displayed the visual artwork on advertisements, event flyers, and jackets for

21   Defendant Unknown Riders M.C.  (*Id.*)  Plaintiff further alleges that Defendants continued their

22   unauthorized use of Plaintiff's copyrighted visual artwork in promotions for Defendant

23   Unknown Riders M.C. events and in social media postings to increase goodwill and name

24   recognition for Defendants.  (*Id.* ¶ 41.)

25      Plaintiff served Defendant Zeno and Defendant Unknown Riders M.C. by U.S. Mail and

26   Certified Mail on May 2, 2023, after the Court permitted alternate service on Defendants.  (Docs.

27   12-14.)  The Clerk of Court entered default against Defendants on August 25, 2023.  (Docs. 17-

28   18.)

Plaintiff filed the instant motion for default judgment against Defendants on January 16, 2024, seeking injunctive relief and attorneys' fees and costs in the total sum of $5,912.10.  (Doc. 20.)  Plaintiff served Defendants with a copy of the motion by mail. (Doc. 20-5.)  No timely opposition was filed.  *See* L.R. 230(c) ("Opposition, if any, to the grating of the motion shall be in writing and shall be filed and served no later than fourteen (14) days after the motion was filed.").  Plaintiff filed a notice of voluntary dismissal pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i) dismissing DOE Defendants 1-25.  (Doc. 21.)

## II.   LEGAL STANDARD FOR DEFAULT JUDGMENT

Pursuant to Federal Rule of Civil Procedure 55(b)(2), a plaintiff can apply to the court for a default judgment against a defendant that has failed to plead or otherwise defend against the action.  Fed. R. Civ. P. 55(b)(2).  "Upon default, the well-pleaded allegations of a complaint relating to liability are taken as true." *Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983); *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987).

Factors which may be considered by courts in exercising discretion as to the entry of a default judgment include: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.  *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986); *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002).

## III.   DISCUSSION

### A.  Service of Process

In deciding whether to grant or deny a default judgment, a court should assess the adequacy of the service of process on the party against whom default is requested.  *See, e.g., Trujillo v. Harsarb, Inc.*, No. 1:21-cv-00342-NONE-SAB, 2021 WL 3783388, at *4 (E.D. Cal. Aug. 26, 2021) ("As a general rule, the Court considers the adequacy of service of process before evaluating the merits of a motion for default judgment."); *Coach, Inc. v. Diva Shoes &*

3

1  *Accessories*, No. 10-5151 SC, 2011 WL 1483436, at *2 (N.D. Cal. Apr. 19, 2011); *Katzakian v.*

2  *Check Resolution Service, Inc.*, No. 1:10-cv-00716 AWI GSA, 2010 WL 5200912, at *2 (E.D.

3  Cal. Dec. 15, 2010).

4      Federal Rule of Civil Procedure 4 sets forth the requirements for serving an individual

5  within a judicial district of the United States. Under Rule 4, an individual may be served by: (1)

6  delivering a copy of the summons and the complaint to that person personally; (2) leaving a copy

7  of each at the individual's dwelling or usual place of abode with someone of suitable age and

8  discretion who resides there; or (3) delivering a copy of each to an agent authorized by

9  appointment or by law to receive service of process.  Fed. R. Civ. P. 4(e)(2).

10     Rule 4 also permits service on an individual in accordance with state law.  Fed. R. Civ. P.

11  4(e)(1).  California law permits service by mailing a "copy of the summons and of the

12  complaint… (by first-class mail or airmail, postage prepaid) to the person to be served, together

13  with two copies of the notice and acknowledgment provided for in subdivision (b) and a return

14  envelope, postage prepaid, addressed to the sender."  Cal. Civ. Proc. Code § 415.30(a).

15  Subsection (b) of the statute provides the form for a Notice and Acknowledgement of Receipt of

16  Summons which cautions the recipient that "[f]ailure to complete this form and return it to the

17  sender within 20 days may subject you (or the party on whose behalf you are being served) to

18  liability for the payment of any expenses incurred in serving a summons upon you in any other

19  manner permitted by law."  *Id*. § 415.30(b), 415.30(d).  Service by mail is "deemed complete on

20  the date a written acknowledgment of receipt of summons is executed."  *Id*. § 415.30(c); see also

21  *Barlow v. Ground*, 39 F.3d 231, 234 (9th Cir. 1994).

22     According to the briefing and record, Plaintiff's process server attempted service on

23  Defendant Zeno individually and on behalf of Defendant Unknown Riders M.C. on three

24  occasions from January 28, 2023 to January 31, 2023, without success.  (Doc. 11-1 ¶ 7.)  During

25  those attempts at service, the process server was told by Defendant Zeno that he would not

26  accept service and to instead serve the documents to Defendant Zeno's attorney.  (*Id.*)  On

27  February 28, 2023, Plaintiff then attempted service on Defendants by mailing a Notice and

28  Acknowledgement for each Defendant to the attorney of record for Defendant Zeno in the Fresno

4

County Superior Court matter in which Plaintiff's visual artwork is also at issue.  (Doc. 11 ¶ 6.)
An attorney for the firm representing Defendant Zeno in the Fresno County Superior Court
Matter, WHGC P.L.C., responded on March 10, 2023 that the firm did not have the authority to
accept service on behalf of Defendant Zeno and had not had the opportunity to discuss whether
they would be representing their client in the instant matter.  (*Id.* ¶ 7.)  Plaintiff's counsel
continued to attempt to discuss service with attorneys at WHGC P.L.C., but did not receive a
response.  (*Id.* ¶ 8.)  On April 3, 2023, Plaintiff's counsel wrote to WHGC P.L.C. attorneys that
Plaintiff would proceed as if WHGC P.L.C. was not representing Defendants unless WHGC
P.L.C. indicated otherwise.  (*Id.* ¶ 9.)  Plaintiff's counsel then did further research to determine
whether there were other locations or methods by which Defendants could be personally served
but did not find any new methods for personal service.  (*Id.* ¶ 10.)

Plaintiff then filed an application for alternative service by U.S. Mail and U.S. Certified
Mail and requesting an extension of time to serve Defendants under Federal Rule of Civil
Procedure 4(m).  (Doc. 11.)  The Court found that Plaintiff showed good cause for failure to
serve Defendants and that service by U.S. Mail and U.S. Certified Mail at the parties' last known
address is the manner most likely to give actual notice of this proceeding to Defendants.  (Doc.
12 at 6.)  The Court ordered Plaintiff to serve Defendants with the Summons, Complaint, Notice
of ADR, Order Setting Mandatory Scheduling Conference, and Order Granting Plaintiff's
Application for Alternate Service of Process by U.S. Mail and U.S. Certified Mail sent to
Defendants at the parties' last known address, 2546 N. Dearing Ave., Fresno, CA 93703, on or
before May 31, 2023.  (*Id.*)  The Court further ordered that service of Defendants would be
deemed completed on the tenth day after the last mailing.  (*Id.*)

On August 23, 2023, Plaintiff filed affidavits regarding proofs of service on Defendants
Herbert Zeno and Unknown Riders M.C.  (Docs. 13-14.)  In the affidavits, Plaintiff's counsel
stated that on May 2, 2023, she had served Defendant Herbert Zeno individually and as President
of Defendant Unknown Riders M.C. with the Summons, Complaint, Notice of ADR, Order
Setting Mandatory Scheduling Conference, and Order Granting Plaintiff's Application for
Alternate Service of Process by U.S. Mail and U.S. Certified Mail sent to Defendants at the

parties' last known address, 2546 N. Dearing Ave., Fresno, CA 93703.  (Doc. 13 ¶¶ 2-6; Doc. 14 ¶¶ 2-6.)  Plaintiff's counsel further noted that per the Court's order, service of Defendant was deemed complete on the tenth day after the last mailing.  (Doc. 13 ¶ 7; Doc. 14 ¶ 7.)

Having considered the foregoing, the Court finds that Plaintiff properly served Defendants pursuant to Federal Rule of Civil Procedure 4 and California Civil Procedure Code § 415.30(a).

### B.  The *Eitel* Factors Weigh in Favor of Default Judgment

#### 1.  Possibility of Prejudice to Plaintiff

The first factor considers whether a plaintiff would suffer prejudice if default judgment is not entered. *See PepsiCo, Inc.,* 238 F. Supp. 2d at 1177.  Generally, where default has been entered against a defendant, a plaintiff has no other means by which to recover against that defendant.  *Id.*; *Moroccanoil, Inc. v. Allstate Beauty Prods*., 847 F. Supp. 2d 1197, 1200-01 (C.D. Cal. 2012).  Here, the Court finds Plaintiff would be prejudiced if default judgment were not granted.  Default has been entered against Defendants and Plaintiff has no other means to recover against him.  (Docs. 17-18.)  This factor weighs in favor of default judgment.

#### 2.  Merits of Plaintiff's Claims and Sufficiency of the Complaint

The second and third *Eitel* factors, taken together, "require that [the] plaintiff[s] state a claim on which [they] may recover." *PepsiCo, Inc.,* 238 F. Supp. 2d at 1175.  Notably a "defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." *DIRECTV, Inc. v. Hoa Huynh,* 503 F.3d 847, 854 (9th Cir. 2007).

#### Copyright Infringement

To establish copyright infringement, a plaintiff must show: (1) "that he owns a valid copyright…; and (2) that [the alleged infringer] copied protected aspects of the work." *Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin,* 952 F.3d 1051, 1064 (9th Cir. 2020).  To qualify for valid ownership of a copyright, "a work must be original to the author." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc*., 499 U.S. 340, 345 (1981).  "Original, as the term is used in copyright, means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity." *Id*.  "The second prong

of the infringement analysis contains two separate components: 'copying' and 'unlawful appropriation.'" *Id.* Plaintiffs may offer either direct evidence of copying or show that the "similarities between the two works are due to 'copying rather than ... coincidence, independent creation, or prior common source.'" *Bernal v. Paradigm Talent & Literary Agency*, 788 F. Supp. 2d 1043, 1052 (C.D. Cal. 2010).

As to the first element of owning a valid copyright, Plaintiff alleges that he "designed, created, and drew by hand, a work of visual art" and owned the rights and title to a visual work described as:

> In red capital letters the word "UNKNOWN" is at the top. Under the word "UNKNOWN" is a black fist, throttle, brake lever and cable centered. Under that depiction in green capital letters are the letters "MC" centered. Under the letters "MC" in red capital letters is the word "RIDERS " under the word "RIDERS" is city being represented" in this case in green capital letters is the word "FRESNO ". All of the above is on a white background trimmed to the words and fist. With a black border.

(Doc. 1 ¶ 23-24.) Plaintiff alleges that he "designed and created the drawing, that is herein referred to as the Copyrighted Work, in 1972 when Plaintiff and four other members formed a motorcycle club called UNKNOWN RIDERS MC – FRESNO." (*Id.* ¶ 25.) Plaintiff further alleges that in 2021, he "registered his Copyrighted Work with the California Secretary of State through a Trademark/Service Mark registration" and appends the November 9, 2021 application for trademark registration as Exhibit B. (*Id.* ¶ 37; Doc. 1-2.) Plaintiff has therefore sufficiently alleged the first element by creating an original work and being the owner of a valid copyright.

Regarding the copying prong of the second element, Plaintiff alleges that Defendant Zeno and his organization, Defendant Unknown Riders M.C., is a separate organization from the organization Plaintiff belongs to, Unknown Riders MC – Fresno. (Doc. 1 ¶ 34.) Plaintiff alleges that Defendant Zeno and Defendant Unknown Riders M.C. have used and displayed Plaintiff's exact copyrighted visual artwork. (*Id.* ¶¶ 35-36.) Plaintiff further alleges that Defendant Zeno acknowledged in his complaint in the Fresno County Superior Court action that Defendant Zeno "has been prominently displaying Plaintiff's design on advertisements, event flyers, and even jackets of UNKNOWN RIDERS M.C. members." (*Id.*  ¶¶ 7; 38.) Plaintiff also alleges that

1  Defendants have used Plaintiff's copyrighted visual work "(1) in promotions for UNKNOWN

2  RIDERS M.C. events, and (2) in postings on social media to increase their goodwill and name

3  recognition." (*Id.* ¶ 41.) Plaintiff has sufficiently alleged that Defendants have directly copied

4  Plaintiff's visual artwork and has therefore satisfied the second element of infringement.

5       These allegations are taken as true due to Defendants' default, and Plaintiff has met his

6  burden of stating a *prima facie* claim for copyright infringement pursuant to 17 U.S.C. §§ 106 *et*

7  *seq*. Plaintiff is thereby entitled to injunctive relief for Defendants' copyright infringement.

8           <u>Violation of California Unfair Competition Law – Unfair Practices Prong</u>

9       Plaintiff's second claim is for violation of California Unfair Competition Law ("UCL"),

10  and Plaintiff clarifies in his motion for default judgment that he relies upon "fraud" and "unfair

11  practices" prongs of UCL violation. (Doc. 1 ¶¶ 55-58; Doc. 20-1 at 16.)

12       California Business and Professions Code § 17200 concerns unfair competition and

13  prohibited activities and states that "unfair competition shall mean and include any unlawful, unfair

14  or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. Each prong of the UCL

15  is a separate and distinct theory of liability. *Lozano v. AT & T Wireless Servs., Inc*., 504 F.3d 718,

16  731 (9th Cir. 2007). To state a claim under the UCL, a plaintiff must identify an underlying statute

17  that defendant violated. *Ingels v. Westwood One Broad. Servs., Inc*., 129 Cal. App. 4th 1050, 1060,

18  (2005) ("A defendant cannot be liable under § 17200 for committing 'unlawful business practices'

19  without having violated another law.").

20       California courts of appeal have applied three different tests to evaluate claims by

21  consumers under the UCL's unfair practices prong. *Drum v. San Fernando Valley Bar Assn*., 182

22  Cal.App.4th 247, 256, 106 Cal.Rptr.3d 46 (2010). Under the first test (the tethering test), a

23  consumer must allege a "violation or incipient violation of any statutory or regulatory provision, or

24  any significant harm to competition." *Id*. The "public policy which is a predicate to a consumer

25  unfair competition action under the 'unfair prong' of the UCL must be tethered to specific

26  constitutional, statutory, or regulatory provisions." *Id*.

27       The test applied in a second line of cases is whether the alleged business practice "is

28  immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers and requires

the court to weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *Drum v. San Fernando Valley Bar Assn*., 182 Cal. App. 4th 247, 257 (2010); *Bardin v. DaimlerChrysler Corp*., 136 Cal. App. 4th 1255, 1260 (2006); *Davis v. Ford Motor Credit Co. LLC*, 179 Cal. App. 4th 581, 593-95 (2009).  Under this second test (the balancing test), the "unfair prong" requires a consumer to plead that (1) a defendant's conduct "is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers" and (2) "the utility of the defendant's conduct" is outweighed by "the gravity of the harm to the alleged victim." *Drum*, 182 Cal. App. 4th at 257.

The third test, which is based on the Federal Trade Commission's definition of unfair business practices, requires that, as a result of unfair conduct, "(1) the consumer injury must be substantial; (2) the injury must not be outweighed by any countervailing benefits to consumers or competition; and (3) it must be an injury that consumers themselves could not reasonably have avoided." *Id.* (citation and internal quotation marks omitted).  The Ninth Circuit has endorsed the tethering test and balancing test but declined "to apply the FTC standard in the absence of a clear holding from the California Supreme Court." *Lozano*, 504 F.3d at 736.  Therefore, for this Court's purposes, conduct is "unfair" under the UCL when the alleged unfairness is (1) "tethered to specific constitutional, statutory, or regulatory provisions;" or (2) when the practice is "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers" and the utility of that conduct is outweighed by the harm to victim. *Drum*, 182 Cal. App. 4th at 257.

Here, Plaintiff does not identify a legislatively declared policy that Defendants' alleged actions is tethered to.  (*See* Doc. 1; Doc. 20-1.)  Nor does Plaintiff attempt to explain how Defendants' practices are sufficiently immoral, unethical, oppressive, unscrupulous, or injurious that any utility is outweighed by consumer harm.  (*Id.*)  Plaintiff solely argues in his motion that Defendants are using Plaintiff's copyrighted visual artwork to confuse or deceive the public regarding the sponsorship, affiliation, and approval of "annual copycat events which Defendants hold in direct competition to the annual, long-standing and traditional events of UNKNOWN RIDERS MC – FRESNO." (Doc. 20-1 at 16.)  However, Plaintiff does not allege in his Complaint that Defendant holds copycat events that are in direct competition with Plaintiff's

9

1   events or that Defendant is trying to deceive or confuse the public.  (*See* Doc. 1.)  Plaintiff simply

2   alleges that "Defendants have engaged in unlawful, unfair, or fraudulent business acts of unfair

3   competition… [that] includes Defendants' unauthorized use of Plaintiff's copyrighted work (1) in

4   promotions for UNKNOWN RIDERS M.C. events, and (2) in postings on social media to

5   increase their goodwill and name recognition."  (*Id.* ¶ 57.)  The allegations in Plaintiff's

6   Complaint therefore do not support Plaintiff's suggested "unfair practices" theory of UCL

7   violation under the tethering test or the balancing test approved by the Ninth Circuit.

8          Moreover, Plaintiff's pleadings do not satisfy the heightened pleading requirements raised

9   by fraud-related claims.  The Ninth Circuit has held that where plaintiffs allege a unified

10  fraudulent course of conduct, the "entire complaint must therefore be pleaded with particularity"

11  pursuant to Federal Rule of Civil Procedure 9(b).  *Kearns v. Ford Motor Co*., 567 F.3d 1120,

12  1127 (9th Cir. 2009) (applying Rule 9(b) requirement to unlawful practices and unfair practices

13  prongs of the UCL); *Hadley v. Kellogg Sales Co*., 243 F. Supp. 3d 1074, 1094 (N.D. Cal. 2017)

14  ("Where Plaintiff has alleged a 'unified course of fraudulent conduct,' Rule 9(b)'s particularity

15  requirement applies to the unlawful and unfair prong of the UCL in addition to the above-

16  discussed fraudulent prong.").  In clarifying the requirements of Federal Rule of Civil Procedure

17  9(b) in a case involving a UCL claim, the Ninth Circuit held that "[a]verments of fraud must be

18  accompanied by 'the who, what, when, where, and how' of the misconduct charged."  *Vess v.*

19  *Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).

20         Furthermore, where plaintiffs' UCL claims "sound in fraud, they must allege specific facts

21  showing that they relied on the alleged misrepresentations or omissions."  *Watkins v. MGA Ent.,*

22  *Inc*., 550 F. Supp. 3d 815, 833–34 (N.D. Cal. 2021);  *Kwikset Corp. v. Superior Ct*., 51 Cal. 4th

23  310, 326–27, 246 P.3d 877, 888 (2011) ("Recognizing that 'reliance is the causal mechanism of

24  fraud'… we held that a plaintiff 'proceeding on a claim of misrepresentation as the basis of his or

25  her UCL action must demonstrate actual reliance on the allegedly deceptive or misleading

26  statements, in accordance with well-settled principles regarding the element of reliance in

27  ordinary fraud actions.'").  District courts have held that the reliance requirement "applies not

28  only to UCL claims asserted under the fraud prong of section 17200 but also to claims asserted

1  under the 'unlawful' and 'unfair' prongs where those claims are predicated on misrepresentation

2  and deception.  *Watkins*, 550 F. Supp. 3d at 834; *Michel v. United States*, No. 16-cv-277-GPC

3  (AGS), 2017 WL 4922831, at *18 (S.D. Cal. Oct. 31, 2017) ("district courts have subsequently

4  held that if the allegations under the unlawful and unfair prongs are premised on the same

5  allegations as the fraud prong, reliance is also a requirement for the unlawful and unfair

6  prongs."); *Kwikset*, 51 Cal. 4th at 326.  To sufficiently plead reliance, a plaintiff "must 'truthfully

7  allege' that 'she would not have bought the product but for the' allegedly actionable

8  misrepresentation or omission."  *Shaeffer v. Califia Farms, LLC*, 44 Cal. App. 5th 1125, 1143,

9  258 Cal. Rptr. 3d 270, 283 (2020).  In the case of omission-related fraud, a plaintiff must "prove

10  that, had the omitted information been disclosed one would have been aware of it and behaved

11  differently."  *Mirkin v. Wasserman*, 5 Cal. 4th 1082, 1093, 858 P.2d 568, 574 (1993).

12       Plaintiff does not allege sufficient specificity or reliance as to Defendants' alleged

13  fraudulent scheme.  (*See* Doc. 1.)  Plaintiff alleges that Defendants have used Plaintiff's

14  copyrighted work "(1) in promotions for UNKNOWN RIDERS M.C. events, and (2) in postings

15  on social media to increase their goodwill and name recognition."  (Doc. 1 ¶¶ 41, 57.)  Plaintiff

16  also broadly states that, as "an actual and proximate result of Defendants' unfair competition,

17  Defendants have unjustly enriched themselves by, among other things, obtaining profits,

18  depriving Plaintiff of the compensation to which he is rightly entitled, and taking credit for

19  Plaintiff's original work."  (*Id.* ¶ 58.)  These allegations do not demonstrate that Plaintiff or others

20  either relied on Defendants' allegedly fraudulent actions or clarify "the who, what, when, where,

21  and how" of Defendants' allegedly fraudulent conduct.  *Watkins*, 550 F. Supp. 3d at 833-34; *Vess*,

22  317 F.3d at 1106.  For these reasons, Plaintiff's claim under the "unfair practices" prong of the

23  UCL would likely not succeed on the merits.

24       <u>Violation of California Unfair Competition Law – Fraud Prong</u>

25       Plaintiff further argues that Defendant violated the UCL based upon the UCL's fraud prong.

26  (Doc. 1 ¶¶ 55-58; Doc. 20-1 at 16.)

27       "The fraudulent prong of the UCL does not require a plaintiff to establish the elements of

28  the common law tort of fraud; rather, a 'fraudulent business practice is one that is likely to deceive

11

members of the public.'" *O'Connor v. Uber Techs., Inc*., 58 F. Supp. 3d 989, 1002 (N.D. Cal. 2014) (citing *Morgan v. AT & T Wireless Servs., Inc*., 177 Cal.App.4th 1235, 1255, 99 Cal.Rptr.3d 768 (2009)).  District courts have generally required that "UCL fraud plaintiffs must allege their own reliance—not the reliance of third parties—to have standing under the UCL."  *See O'Connor*, 58 F. Supp. 3d at 1002; *Copart, Inc. v. Sparta Consulting, Inc*., 339 F. Supp. 3d 959, 987 (E.D. Cal. 2018) ("the plaintiff 'must allege he or she was motivated to act or refrain from action based on the truth or falsity of a defendant's statement, not merely on the fact it was made.'") (citations omitted); *ZL Techs., Inc. v. Gartner, Inc*., No. CV 09-02393 JF (RS), 2009 WL 3706821, at *11 (N.D. Cal. Nov. 4, 2009) (finding that plaintiff lacked standing for UCL fraud claim where Plaintiff "alleges not its own reliance upon the Alleged Defamatory Statements but that of third parties—potential [plaintiff] customers—resulting in a loss of profits and injury"); *Jent v. N. Tr. Corp*., No. CIV 13-01684-WBS-CKD, 2013 WL 5806024, at *4 (E.D. Cal. Oct. 28, 2013) ("As discussed above regarding plaintiffs' negligent misrepresentation claim, allegations of actual reliance are absent here. Plaintiffs' UCL claim therefore cannot proceed under the fraudulent prong.").  Additionally, to satisfy Federal Rule of Civil Procedure 9(b), the Ninth Circuit has held that "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess*, 317 F.3d at 1106.

    As discussed above, Plaintiff's Complaint does not satisfy the standing requirements for UCL fraud-related claims.  Plaintiff's Complaint does not allege that Plaintiff relied upon Defendants' fraudulent actions.  (*See* Doc. 1.)  Plaintiff also does not suggest a specific injury or allege that he was motivated to act or refrain from action based on Defendants' use of Plaintiff's copyrighted visual artwork.  *Copart*, 339 F. Supp. 3d at 987.  Plaintiff only alleges that Defendants have used Plaintiff's copyrighted visual artwork "(1) in promotions for UNKNOWN RIDERS M.C. events, and (2) in postings on social media to increase their goodwill and name recognition" and broadly states that, as "an actual and proximate result of Defendants' unfair competition, Defendants have unjustly enriched themselves by, among other things, obtaining profits, depriving Plaintiff of the compensation to which he is rightly entitled, and taking credit for Plaintiff's original work."  (Doc. 1 ¶¶ 57-58.)  These allegations do not demonstrate that Plaintiff either relied on

Defendants' allegedly fraudulent actions or clarify "the who, what, when, where, and how" of Defendants' allegedly fraudulent conduct. *Watkins*, 550 F. Supp. 3d at 833-34; *Vess*, 317 F.3d at 1106. Therefore, Plaintiff does not have sufficient standing and has not properly pleaded a UCL claim under the fraud prong. Accordingly, Plaintiff's UCL claim would likely not succeed on the merits.

The Court finds that Plaintiff has sufficiently pleaded and would likely succeed on the merits of his copyright infringement claim, but insufficiently pleaded his UCL claim. Because federal copyright statutes are the source for Plaintiff's requested relief of an injunction and the award of attorneys' fees, the insufficiency of Plaintiff's pleading of the UCL claim does not impact the merits of the copyright claim and resultant relief. The Court therefore finds that the second and third *Eitel* factors weigh in favor of default judgment.

### 3.   The Sum of Money at Stake in the Action

Under the fourth factor cited in *Eitel*, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *PepsiCo, Inc.,* 238 F. Supp. 2d at 1176; *see also Philip Morris USA, Inc. v. Castworld Prods., Inc.,* 219 F.R.D. 494, 500 (C.D. Cal. 2003).

Here, Plaintiff seeks an injunction and attorneys' fees and costs. (Doc. 20-1 at 16-17, 21-22.) Plaintiff's counsel states that Plaintiff incurred costs in the amount of $512.10 and attorneys' fees in the amount of $5,400.00. (Doc. 20-3 ¶¶ 17-20.) While Plaintiff initially notes that he seeks "compensatory damages" in his motion, Plaintiff's motion also states that "Plaintiff Seeks No Damages-Only Permanent Injunctive Relief" and Plaintiff's proposed order only includes injunctive relief and attorneys' fees and costs. (Doc.20-1 at 6, 16; Doc. 20-4.) The amount of money at stake is relatively small and it does not seem unreasonable in light of the allegations contained in the complaint. Accordingly, this factor does not weigh against entry of default judgment.

### 4.   The Possibility of a Dispute Concerning Material Facts

Following the Clerk's entry of default, the Court may assume the truth of well-pleaded facts in the complaint and, thus, there is no likelihood that any genuine issue of material fact

exists.  Further, Defendants' failure to file an answer in this case and his failure to file a response to the request for entry of default or a response to the instant motion supports the conclusion that the possibility of a dispute as to material facts is minimal.  *See, e.g., Elektra Entm't Grp. Inc. v. Crawford*, 226 F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists.").  This factor therefore weighs in favor of default judgment.

### 5.  Whether the Default Was Due to Excusable Neglect

The sixth *Eitel* factor considers the possibility that Defendants' default resulted from excusable neglect.  *PepsiCo, Inc.,* 238 F. Supp. 2d at 1177.  Courts have found that where a defendant was "properly served with the complaint, the notice of entry of default, as well as the paper in support of the [default judgment] motion," there is no evidence of excusable neglect.  *Shanghai Automation Instrument Co. v. Kuei*, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001).

Upon review of the record, the Court finds that the default was not the result of excusable neglect.  *See PepsiCo, Inc.*, 238 F. Supp. 2d at 1177.  Defendants were properly served with the complaint (Docs. 13-14) and the motion for default judgment, which included notification of the Clerk's entry of default (Doc. 20-5).  Despite service with these documents, Defendants have not appeared in this action.  Thus, the record suggests that Defendants have chosen not to participate in this action, and not that the default resulted from any excusable neglect.  Accordingly, this factor weighs in favor of the entry of a default judgment.

### 6.  The Strong Policy Favoring Decisions on the Merits

"Cases should be decided upon their merits whenever reasonably possible."  *Eitel*, 782 F.2d at 1472.  However, district courts have concluded with regularity that this policy, standing alone, is not dispositive, especially where a defendant fails to appear or defend itself in an action.  *PepsiCo, Inc.,* 238 F. Supp. 2d at 1177; *see also Craigslist, Inc. v. Naturemarket, Inc.,* 694 F. Supp. 2d 1039, 1061 (N.D. Cal. Mar. 5, 2010).  Although the Court is cognizant of the policy favoring decisions on the merits, that policy is unavailable here because Defendants have not appeared in this action.  Accordingly, the Court finds that this factor does not weigh against entry

1  of default judgment.

2  **C. Damages**

3  Plaintiff states in his motion for default judgment and proposed order that he seeks

4  injunctive relief and attorneys' fees and costs.  (Doc. 20-1; Doc. 20-4.)  Though Plaintiff initially

5  notes that he seeks "compensatory damages" in his motion, Plaintiff's motion also states that

6  "Plaintiff Seeks No Damages-Only Permanent Injunctive Relief" and Plaintiff's proposed order

7  only includes injunctive relief and attorneys' fees and costs.  (Doc.20-1 at 6, 16; Doc. 20-4.)

8  Accordingly, the Court only addresses the requested injunctive relief and attorneys' fees and

9  costs.

10  1.  Injunctive Relief

11  Plaintiffs seek an injunction prohibiting Defendant from engaging any further activities

12  which would constitute copyright infringement.  (Doc. 1 ¶¶ 43, 54; Doc. 20-1 at 18-21; Doc. 20-4

13  at 2-3.)  Such relief is expressly authorized by 17 U.S.C. § 502.  In copyright infringement actions,

14  "[a]s a general rule, a permanent injunction will be granted when liability has been established and

15  there is a threat of continuing violations."  *MAI Systems Corp. v. Peak Computer, Inc*., 991 F.2d

16  511, 520 (9th Cir.1993).

17  Plaintiff has alleged that, in 2021, Plaintiff and members of his organization Unknown

18  Riders MC - Fresno demanded Defendants cease and desist use of Plaintiff's copyrighted visual

19  artwork.  (Doc. 1 at 36, 42.)  Plaintiff then attempted to remedy the alleged infringement through

20  this action.  Plaintiff's process server attempted service upon Defendant Zeno and notified

21  Defendant Zeno of the action but was told by Defendant Zeno that Defendant Zeno would not

22  accept service.  (Doc. 11-1 ¶ 7.)  Based upon this sequence of events, the Court finds that there is

23  a threat of continuing violations and injunctive relief is appropriate.  Therefore, an injunction

24  should issue requiring Defendants to cease use of Plaintiff's copyrighted visual artwork.

25  2.  Attorneys' Fees and Costs

26  Plaintiff seeks an award of attorneys' fees in the amount of $5,400.00.  Recovery of costs,

27  including attorneys' fees, are authorized in copyright infringement actions.  17 U.S.C. § 505.

28  Attorney fee awards are calculated using the lodestar method, which multiplies the numbers of

15

1   hours reasonably spent on the matter with a reasonable hourly rate. *Vogel v. Harbor Plaza Ctr.,*

2   *LLC*, 893 F.3d 1152, 1160 (9th Cir. 2018).  The district court has the discretion to make adjustments

3   to the number of hours claimed or to the lodestar but is required to provide a clear but concise

4   reason for the fee award. *Gates v. Deukmejian*, 987 F.2d 1392, 1398 (9th Cir. 1992).

5                    Hourly Rate

6          As indicated, Plaintiff requests an hourly rate of $300.00 for work by Amy R. Lovegren-

7   Tipton, who has approximately 15 years of civil litigation experience.  (Doc. 20-3 ¶¶ 18-19.)

8   Courts in this district have found similar rates reasonable. *See Roach v. Tate Publ'g & Enters.*,

9   No. 1:15-cv-00917-SAB, 2017 WL 5070264, at *10 (E.D. Cal. Nov. 3, 2017) (awarding attorney

10  with sixteen years of experience $325.00 per hour in copyright action); *Trujillo v. GH Food Mart,*

11  *Inc.*, No. 1:20-cv-00368-AWI-SKO, 2020 WL 4697139, at *7 (E.D. Cal. Aug. 13, 2020) (finding

12  $300 to be a reasonably hourly rate in evaluating a motion for default judgment related to the

13  Americans with Disabilities Act).  The Court therefore finds the requested hourly rate to be

14  reasonable for Ms. Lovegren-Tipton.

15                   Attorney Time Expended

16         Plaintiff seeks recovery for 18 hours of work performed by Ms. Lovegren-Tipton at

17  $300.00 per hour.  (Doc. 20-3 ¶ 20.)  When considering the record in this matter, including the

18  complaint, multiple service attempts, application for alternate service, and the instant motion for

19  default judgment, the Court finds that the 18 hours billed by Ms. Lovegren-Tipton is reasonable.

20  The Court will therefore recommend awarding Plaintiff $5,400.00 for 18 hours of work by Ms.

21  Lovegren-Tipton to litigate this case.

22                   Litigation Expenses and Costs

23         Plaintiff requests recovery of litigation expenses and costs of $512.10, consisting of initial

24  case filing fee of $402.00 and process service fees of $110.10.  (Doc. 20-3 ¶ 17.)  In a copyright

25  infringement action, the "court in its discretion may allow the recovery of full costs by or against

26  any party other than the United States or an officer thereof.  17 U.S.C. § 505.  Plaintiff's

27  requested costs include the court filing fee and costs of service, which are compensable.

28  Accordingly, the Court will recommend that Plaintiff be awarded the sum of $512.10 for

                                                  16

1   litigation expenses and costs.

2       **V.    CONCLUSION AND RECOMMENDATION**

3       Based on the foregoing, the Court HEREBY RECOMMENDS as follows:

4       1.    Plaintiff's motion for default judgment be granted;

5       2.    An injunction issue against Defendants requiring that each of the Defendants, their

6   officers, agents, servants, employees, representatives, their successors and assigns, and all other

7   persons, firms, or corporations in active concert or participation with each of the Defendants who

8   receive notice hereof, including but not limited to all subsidiaries, affiliates, licensees, employees,

9   or assigns of each of the Defendants, be permanently enjoined from[1]:

10       a.    Directly or indirectly infringing, in any manner, Plaintiff's "Copyrighted

11   Work," which is described as follows:

12           In red capital letters the word "UNKNOWN" is at the top. Under the

13           word "UNKNOWN" is a black fist, throttle, brake lever and cable
centered. Under that depiction in green capital letters are the letters

14           "MC" centered. Under the letters "MC" in red capital letters is the
word "RIDERS " under the word "RIDERS" is city being

15           represented" in this case in green capital letters is the word
"FRESNO ". All of the above is on a white background trimmed to

16           the words and fist. With a black border.

17       b.    Displaying the Copyrighted Work on jackets or other articles of clothing

18   worn by Defendants or their officers, agents, servants, employees, representatives, their

19   successors and assigns, and all other persons, firms, or corporations in active concert or

20   participation with each of the Defendants;

21       c.    Using Plaintiff's Copyrighted Work, or any reproduction, counterfeit,

22   copy, or colorable imitation of the Copyrighted Work, in connection with the offering, promotion,

23   marketing, or production of any event or gathering which is not affiliated and approved and

24   authorized by Plaintiff;

25       d.    Applying the Copyrighted Work, or any reproduction, counterfeit, copy or

26   colorable imitation of the Copyrighted Work, to any advertisement, website, social media post,

27   

28   

---

[1] Plaintiff further requests that the Court retain jurisdiction for purposes of enforcing the injunction. (Doc. 20-4 at 3.)

point of purchase materials, catalogue, brochure, sign, print, press release, or other material used

in connection with the promotion, and/or offering for sale or distribution of any club-related or

event-related merchandise;

          e.      Engaging in any conduct that tends falsely to represent that, or is likely to

confuse, mislead, or deceive members of the public to believe that Defendants' activities are

sponsored, approved, affiliated with or licensed by Plaintiff, or are in some way connected or

affiliated with Plaintiff or the motorcycle club of which Plaintiff is a founding member; and

    3.      Judgment be entered in Plaintiff's favor and against Defendant in the amount of

$5,912.10, consisting of attorneys' fees in the amount of $5,400.00 and costs of the suit in the

amount of $512.10; and

    4.      Plaintiff is HEREBY ORDERED to mail a copy of these findings and

recommendations to defendant at defendant's last known address.

These Findings and Recommendations will be submitted to the United States District

Judge assigned to the case, as required by 28 U.S.C. § 636(b)(l).  Within **fourteen (14) days** after

being served with these findings and recommendations, the parties may file written objections

with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings

and Recommendations."  The parties are advised that the failure to file objections within the

specified time may result in the waiver of the "right to challenge the magistrate's factual

findings" on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v.*

*Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).


IT IS SO ORDERED.

Dated:   **February 23, 2024**          /s/ *Barbara A. McAuliffe*
                                             UNITED STATES MAGISTRATE JUDGE